Argued August 22, affirmed September 26, 1977

In the Matter of the Dissolution of the Marriage of
REMILLARD, *Respondent,*
*and*
REMILLARD, *Appellant.*
(No. 400-064, CA 8246)
569 P2d 651

W. A. Franklin, Portland, argued the cause for appellant. With him on the brief was Franklin, Bennett, Ofelt & Jolles, P.C., Portland.

Frank W. Mowry, Portland, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Richardson and Johnson, Judges.

RICHARDSON, J.

## RICHARDSON, J.

This appeal involves an order changing custody of the parties' seven year old son from the father to the mother. The issue is whether there was sufficient change of circumstances to justify the change in custody.

The decree of dissolution of marriage, entered in June 1974, granted custody of the child to the mother. Shortly thereafter the mother remarried. She and her new husband became involved in marital difficulties revolving around her husband's drinking problems resulting in her leaving the home on numerous occasions. On at least three occasions she was beaten quite badly by her husband and she finally sought sanctuary in a home for women who have been subjected to physical violence. This occurred in October of 1976. She left the child with a friend.

Following a short period of counseling the mother returned home and she and her husband entered counseling programs. Father moved for change of custody which was granted after hearing on November 17, 1976. In changing custody to the father the court made the following comment:

> "The basis for the modification is the upheaval that had existed in the mother's home with the battles raging between her and her present husband, Ted Dodge, resulting in her receiving serious physical injury. The mother and stepfather are attempting counseling, but not sufficient time has elapsed to assure that the pattern of violent behavior that has existed for more than a year and a half will change."

Following this change in custody the father remarried. The parties lived in the same neighborhood, within walking distance of each other. The mother was accorded liberal visitation with the child and he spent considerable time at his mother's home. Her present husband has custody of two children by a former marriage who are the child's playmates.

On February 21, 1977, three months after the

previous modification, the mother refused to return the child after a visit and instituted this proceeding to regain custody. In returning custody to the mother the court made no specific findings other than those incorporated in the following comment:

> "Time has run on. Mr. Dodge has quit his drinking. Mrs. Dodge [mother] is willing to make those changes in her life that are necessary to stabilize her marriage. It is now stabilized. She is seeking professional help. The violence has ended."

The father's principal argument is there is no change in circumstances other than the passage of a short period of time. The mother argues her circumstances have improved and she is fully capable of providing a good home for the child. Additionally she contends the child is suffering emotional upset from living with his father and the best interest of the child require a change of custody.

The Supreme Court in *Greisamer and Greisamer,* 276 Or 397, 555 P2d 28 (1976), set forth two essential requirements in deciding if a change of custody is warranted. The parent seeking a change in custody must show that subsequent to the last custody modification the capacity of either parent to properly care for the child has changed. And, considering all the circumstances, it would be in the best interest of the child to make the change.

Step one in the analysis may be satisfied by showing that following the last change in custody the custodial parent's circumstances have made him less capable of caring for the child, or that the circumstances of the noncustodial parent have improved to the point that that parent can provide a good home for the child. Without evidence of a change in the circumstances of either parent we do not reach the second part of the analysis, i.e., whether the best interest of the child is served by a change in custody.

We agree with the trial court that there has been a change by the improvement of the mother's marital

situation, and the factors which produced the change in custody in November 1976, have largely been eliminated.

In resolving questions of child custody and determining the best interest of the child we have repeatedly emphasized the importance of a stable and secure homelife for children who are shifted from one parent figure to another and required to make adjustments attendant upon such changes. We are reluctant to uproot young children unless the change is necessary for their best welfare by putting them in a better environment or removing them from a detrimental environment. This requires a weighing process to see if the damage resulting from a change is outweighed by the benefits to the child's welfare from a different living situation. It goes without saying a child would be benefited by removal from a harmful environment.

The mother presented evidence the child was not adjusting to living with his father and was experiencing substantial emotional upset. The child on some occasions resisted returning to his father's home after visits with his mother. Father presented contradicting evidence. The court interviewed the child *in camera* during both hearings on the changes in custody. At the first hearing the child expressed a desire to live with his father and said he did not like the drinking and fighting in his mother's home. The court summarized its impression of the child after the interview:

"Jeff has an ability to write far in excess what is normally seen by a first grader in the month of November. When Jeff discussed his stepfather he hung his head and tears welled a little bit in his eyes. When he spoke of his father, he broke into a small grin."

During the interview at the second hearing the child emphatically stated he did not want to live with his father and that he disliked his father's new wife and the baby-sitter selected for him. Concerning the child at this interview the court said:

"I'll state for the record that when Jeff talked about his mother, his face had a shine and looked enthusiastic.

[ 1115 ]

When he described his father and the Sewells [the baby-sitter], he would not look me in the eye. He was downcast and his voice has a tremor in it."

■ While the expressed desire of a child to live with one parent or the other should be given consideration it must be used cautiously. The conclusion of a young child as to where he would like to live may be based on criteria that appeal to a child but are not necessarily consistent with his welfare. He may simply be responding to the greener pastures presented by the noncustodial parent. Or, he may consciously or unconsciously be taking sides and playing one parent against the other for his own benefit. The opportunity to view the child, however, and observe his reactions to each parent gives the trial court a basis for concluding the child is adversely affected by his present living situation.

■ The evidence in this case strongly indicates the child is not adjusting to living with his father and his emotional well-being would be affected by leaving him with his father. The trial court concluded there was a material change in the mother's homelife and the best interest of the child would be served by returning him to his mother. We agree.

Affirmed. No costs to either party.