Argued August 23, reversed October 16, reconsideration denied
November 28, petition for review denied December 12, 1978

In the Matter of the Marriage of
WYATT, *Respondent,*
*and*
WYATT, *Appellant.*
(No. 94631, CA 10667)
585 P2d 31

Mark L. B. Wheeler, Salem, argued the cause for appellant. With him on the brief was Schlegel, Milbank, Wheeler, Jarman & Hilgemann, Salem.

Clayton C. Patrick, Salem, argued the cause for respondent. With him on the brief was Jean W. Christensen, Salem.

Before Schwab, Chief Judge, and Lee, Richardson and Joseph, Judges.

RICHARDSON, J.

## RICHARDSON, J.

Father appeals an order changing custody of the parties' eight year old son, Jamal, from father to mother. Father contends the court erred in finding a substantial change of circumstances to warrant a modification in custody.

A decree of dissolution was granted in June of 1976. The parties agreed that father would live at the farm residence of the couple and receive custody of four of their five children, including Jamal. Mother received custody of the parties' three year old son, Justin. At the time the decree was entered, mother was a student at the Oregon College of Education and lived in a small house in Monmouth. She supported herself with a grant and loan from OCE, child support for Justin, and certain funds from her present husband whom she was then dating.

Preschool testing in the summer of 1976 indicated Jamal was not mature enough to enter the first grade. As a result, the parties agreed that he would attend a preschool program on the OCE campus in Monmouth. By agreement of the parties, Jamal lived with his mother in Monmouth during his participation in the program and after the decree was entered awarding legal custody of the boy to father.

Father regained physical custody of Jamal in September of 1976, when he began first grade. However, Jamal returned to live with his mother in Monmouth in December of 1976. Father testified that Jamal was returned to live with his mother at her request and to encourage an attempt at reconciliation by the couple. Jamal's first grade teacher testified that she believed Jamal was more settled and was doing better in school after he returned to his mother's residence in Monmouth. There is conflicting evidence in the record as to when Jamal was again returned to his father. Mother testified Jamal remained in her physical custody until September of 1977. Father stated Jamal returned to the farm at the end of the school year in June. There is

no disagreement, however, that Jamal's return was opposed by mother, who shortly thereafter filed the instant proceedings in order to obtain his legal custody.

■ Mother concedes that father is a proper parent. She contends, however, that there has been a change of circumstances in her ability to care for Jamal and that his best interests require that he be placed in her custody. Mother has completed her requirements for a bachelor's degree and was employed as a teacher's aide at the Dallas Elementary School at the time of the hearing.[1] She has remarried and lives with her husband, who is also employed, in a rented home in Monmouth. They have purchased farm land outside of Falls City and plan to build a home there. Her new husband testified that he has a close relationship with Justin and Jamal. Mother also points to the fact that Jamal was shown to be more settled and his teacher believed his work in school improved after he returned to live with her. After Jamal was returned to his father's custody, his second grade teacher testified he was doing average work, but was not working up to his potential. Finally, mother contends the fact that Jamal was left in her physical custody with father's approval during the summer of 1976 and the period of December, 1976, through June of 1977 is a change of circumstances sufficient to support a change in custody.

■ We indicated in *Remillard and Remillard,* 30 Or App 1111, 1114, 569 P2d 651 (1977), that the Supreme Court has established two requirements in determining whether a change in custody is warranted.

> "* * * The parent seeking a change in custody must show that subsequent to the last custody modification the capacity of either parent to properly care for the

---

[1] Mother's graduation and employment would not be a sufficient change of circumstances standing alone as it would have been reasonably contemplated at the time the decree was entered.

child has changed. And, considering all the circumstances, it would be in the best interest of the child to make the change." 30 Or App at 1114.

The fact that the circumstances of the noncustodial parent have improved so that he or she can now adequately provide for the child may be and here is a sufficient change in circumstances to meet the first requirement. *Greisamer and Greisamer,* 276 Or 397, 555 P2d 28 (1976); *Remillard and Remillard, supra.*

■ Mother testified that she agreed at the time of the decree to father having custody of Jamal because father refused to pay child support and she was financially incapable of supporting both children on the resources she had while a student. She is presently working and married to a man who is also employed. Her life has stabilized in the year and one-half since the decree was entered. She can now provide a good home for Jamal. However, a finding that there has been a change in circumstances in the ability of the noncustodial parent to care for the child meets only one of the necessary criteria required to modify an award of custody. Considering all the circumstances, we must determine whether the best interest of the child would be served by the change. We are not satisfied from the record that this is the case here and, for this reason, we reverse.

■ We are faced with a situation where either parent can offer an excellent home which more than adequately provides for the physical and emotional needs of the child. In addition to two brothers and a sister, father's household includes a second wife who has developed a close relationship with Jamal. Although a report from the Family Court Services Division indicates their counselors believed Jamal was "more emotionally identified" with his mother, a private psychologist who, at father's request, observed Jamal at home with his father, step-mother and siblings believed the boy was well identified as a member of that household. Assuming without deciding that mother's home is a

slightly better environment for Jamal, the potential detrimental effect upon this young child outweighs what is at best a questionable benefit to be gained from yet another move.[2]

Reversed. No costs to either party.

---

[2]We note that the trial court granted a stay of its order pending father's appeal of the custody modification to this court. As a result Jamal has been in his father's household continuously since the summer of 1977.