2016 UT App 6

## THE UTAH COURT OF APPEALS

LEONOR ZAVALA,
Appellee,
*v.*
ARMANDO D. ZAVALA,
Appellant.

Opinion
No. 20141031-CA
Filed January 14, 2016

Third District Court, Salt Lake Department
The Honorable Keith A. Kelly
No. 114900271

David C. Blum, Attorney for Appellant

David Pedrazas, Attorney for Appellee

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which
JUDGE STEPHEN L. ROTH concurred and SENIOR JUDGE RUSSELL W.
BENCH concurred in the result.[1]

VOROS, Judge:

¶1 This is a child custody dispute arising from a 2011 divorce. On cross-petitions for modification, the district court found a material and substantial change of circumstances and modified the parties' stipulated school-year custody schedule

---

1. Senior Judge Russell W. Bench sat by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

from a 7/7 schedule to a 9/5 schedule.[2] We conclude that the district court acted within its discretion in modifying the decree; accordingly, we affirm.

BACKGROUND

¶2 Armando Zavala (Father) and Leonor Zavala (Mother) married in 2007 and divorced in 2011. They had one child. The stipulated Decree of Divorce awarded the parties joint legal and physical custody of the child. The parties stipulated to an equal time-sharing arrangement under which the child resided with Father 182 nights a year and with Mother 183 nights a year. The decree ordered Father to pay $149 per month as base child support. The decree was entered in February 2011.

¶3 Seven months later, Mother filed a Petition to Modify Parent Time seeking to reduce Father's parent time on the ground that the child "needs routine and a stable environment." Two months later, Father filed a counter-petition seeking sole legal and physical custody of the child on the ground that Mother's relocations were not in the child's best interest. The court appointed a custody evaluator, Dr. Todd Dunn. Mother retained an expert, Dr. Matthew Davies.

¶4 The court held a trial over five days. Both parties and both experts testified. Dr. Dunn recommended that Father have nine nights out of fourteen nights, because it would "create less conflict." Dr. Davies opined that Dr. Dunn's arrangement would not reduce conflict.

---

2. This means that for every two-week period during the school year, the child spends nine nights with Mother and five with Father, rather than seven with each.

¶5    The district court entered Amended Findings of Fact and Conclusions of Law, an Order of Modification, and an order denying Father's post-trial motions. The court amended the decree in two respects. First, it amended the parties' school-year custody schedule, awarding Mother nine out of every fourteen nights with the child during the school year. The court left the summer custody schedule intact. Second, based on the amended custody schedule and Father's increased income, the court increased his child support from $149 a month to $354 a month. The court also ordered Mother to pay Dr. Davies's fees and Father to pay Dr. Dunn's fees. Father appeals.

ISSUES ON APPEAL

¶6    First, Father contends that the district court erred by modifying the custody arrangement without first finding a material and substantial change of circumstances since the entry of the decree.

¶7    Second, Father contends that the district court committed plain error when it "included and considered events that occurred prior to the entry of the decree."

¶8    Third, Father contends that the district court's findings do not support its custody order.

¶9    Fourth, Father contends that the district court "failed to consider the 4-903 factors" under the Utah Rules of Judicial Administration. *See* Utah R. Jud. Admin. 4-903.

¶10    Fifth, Father contends that the district court erred in rejecting the recommendations of Dr. Todd Dunn, the court-appointed custody evaluator.

¶11    Finally, Father contends that the district court erred in requiring him to pay Dr. Dunn's expert witness fees.

ANALYSIS

I. Father Invited Any Error in the District Court's Finding of a
Material and Substantial Change of Circumstances

¶12    First, Father contends that the district court erred by modifying the custody arrangement without first finding a material and substantial change of circumstances had occurred since the entry of the divorce decree. The "'determination of the trial court that there [has or has not] been a substantial change of circumstances . . . is presumed valid, and we review the ruling under an abuse of discretion standard.'" *Doyle v. Doyle*, 2009 UT App 306, ¶ 7, 221 P.3d 888 (alteration and omission in original) (quoting *Young v. Young*, 2009 UT App 3, ¶ 4, 201 P.3d 301), *aff'd* 2011 UT 42, 258 P.3d 553.

¶13    Under Utah Code section 30-3-10.4(2)(b), "a court order modifying . . . an existing joint legal or physical custody order shall contain written findings that: (i) a material and substantial change of circumstance has occurred; and (ii) a modification . . . would be an improvement for and in the best interest of the child." Utah Code Ann. § 30-3-10.4(2)(b) (LexisNexis 2012). Thus, "the party seeking modification must demonstrate (1) that since the time of the previous decree, there have been changes in the circumstances upon which the previous award was based; and (2) that those changes are sufficiently substantial and material to justify reopening the question of custody." *Hogge v. Hogge*, 649 P.2d 51, 54 (Utah 1982).

¶14    The parties disagree over whether modifying a stipulated—as opposed to an adjudicated—custody award requires a finding of a material and substantial change of circumstances. In *Elmer v. Elmer*, our supreme court held that when custody decrees are not adjudicated, "the res judicata policy underlying the changed-circumstances rule is at a particularly low ebb." 776 P.2d 599, 603 (Utah 1989).

¶15   This court seemed to take the analysis a step further when it applied *Elmer* in *Woodward v. LaFranca*, stating that "when the trial court considers a petition to modify an unadjudicated divorce decree, . . . it is unnecessary for the trial court to make a threshold determination of material change in circumstances." 2013 UT App 147, ¶ 32, 305 P.3d 181. Mother maintains that, post-*Woodward*, "courts are no longer required to make a finding of substantial change in circumstances when the parties stipulated and agreed upon the custody provisions in the Decree of Divorce." We take this opportunity to clarify.

¶16   The required finding of a material and substantial change of circumstances is statutory. Neither this court nor the supreme court has purported to—or could—alter that requirement. *See Hooban v. Unicity Int'l, Inc.*, 2012 UT 40, ¶ 20 n.4, 285 P.3d 766 (stating "our cases cannot be read to override the clear terms of [a] statute"). Rather, our courts have recognized the requirement for what it is: a legislative expression of the principle of res judicata. If a custody award has already been entered, custody will not be re-examined absent a material and substantial change of circumstances.

¶17   But whether a change of circumstances qualifies as "sufficiently substantial and material to justify reopening the question of custody," *Hogge*, 649 P.2d at 54, depends on the nature of the underlying custody award. In the case of a stipulated award, in *Elmer*'s parlance, the res judicata policy underlying the changed-circumstances rule is at a low ebb, because "an unadjudicated custody decree is not based on an objective, impartial determination of the best interests of the child." *Elmer*, 776 P.2d at 603. In such a case, the court does not re-determine the custody award, but adjudicates it for the first time. Thus, a lesser showing will support modifying a stipulated award than would be required to modify an adjudicated award.

¶18    *Elmer*'s balancing of interests thus respects the statutory framework, recognizes the true nature of the inquiry, and—most importantly—accords priority to the best interest of the child. Any contrary statements in *Woodward* notwithstanding, *Elmer* does not permit the best-interest inquiry to swallow up the changed-circumstances inquiry: "Even an overwhelming case for the best interest of the child could not compensate for a lack of proof of a change in circumstances." *Doyle v. Doyle*, 2011 UT 42, ¶ 38, 258 P.3d 553.[3]

¶19    We turn now to Father's contention that the district court erred by modifying the custody arrangement without first finding a material and substantial change of circumstances had occurred since the entry of the decree. The district court rejected this contention in connection with Father's post-trial motions. In keeping with the foregoing analysis, the district court recognized its duty to find a material and substantial change of circumstances. The court also noted, again in keeping with the foregoing analysis, that the cross-petitions to modify represented the first opportunity for any court to evaluate the best interest of the child in the custody context, thus recognizing a relaxed standard for assessing whether any change of circumstances qualified as material and substantial.

¶20    The court also observed that both parties had alleged that circumstances had changed sufficiently to warrant a modification of the custody award. On appeal, Mother argues that by filing a petition alleging a material and substantial change of circumstances, Father waived any claim that such a change had not occurred. We agree.

---

3. To the extent our opinion in *Woodward v. LaFranca*, 2013 UT App 147, 305 P.3d 181, may vary from this analysis, we disavow it as inconsistent with *Elmer v. Elmer*, 776 P.2d 599, 603 (Utah 1989). *See State v. Menzies*, 889 P.2d 393, 399 n.3 (Utah 1994).

¶21　Under the invited-error doctrine, "a litigant may not induce the trial court to make a ruling and then argue on appeal that the ruling was in error." *Kerr v. Salt Lake City*, 2013 UT 75, ¶ 44, 322 P.3d 669. The invited-error doctrine "is crafted to discourage[] parties from intentionally misleading the trial court so as to preserve a hidden ground for reversal on appeal" and "to give the trial court the first opportunity to address the claim of error." *State v. Geukgeuzian*, 2004 UT 16, ¶ 12, 86 P.3d 742 (alteration in original) (citation and internal quotation marks omitted).

¶22　Father acknowledges that in the district court he alleged a material and substantial change of circumstances, specifically, that Mother's "relocations and conduct constituted changes in circumstances sufficient to award him custody." But he disputes that his allegation could have induced the district court's finding of changed circumstances. Father reasons that the court must have rejected his allegations or it "would not have awarded custody to [Mother]."

¶23　This is not how we read the record. In denying Father's post-trial motions, the district court noted that 27 of its amended findings "discuss in detail the changed circumstances warranting a custody modification." Relevant here, the court found that "[s]ince the entry of the Decree of Divorce," Mother "relocated at least 2 separate occasions," first from West Valley City to Layton, then from Layton to Clearfield. The court then found the number of miles and minutes of travel time separating each of Mother's new residences from Father's residence. We thus conclude that the district court relied on the very change of circumstances Father alleged.

¶24　Father reasons that the district court must have rejected his allegation of a material and substantial change of circumstances because the court did not award Father sole custody. This argument confuses the changed-circumstances

inquiry with the best-interest inquiry. The district court's findings show that the court rejected Father's position with respect to the latter, not the former.

¶25 The district court entered findings on the question of a material and substantial change of circumstances. And because the court relied on the very facts that Father himself argued justified modifying the custody award, we reject under the invited-error doctrine Father's contention that the court failed to find a material and substantial change of circumstances.

## II. The District Court Properly Considered Pre-Decree Facts

¶26 Father next contends that the district court committed plain error when it "included and considered events that occurred prior to the entry of the decree." He notes that the court's ruling "identifies a number of events that occurred prior to the parties' divorce and, by their inclusion in [its] findings, were obviously part of [its] ruling."

¶27 To establish plain error, an appellant must show "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined." *State v. Dunn*, 850 P.2d 1201, 1208–09 (Utah 1993); *see also Danneman v. Danneman*, 2012 UT App 249, ¶ 10, 286 P.3d 309. "To establish that an error should have been obvious to the trial court, [an appellant] must show that the law governing the error was clear at the time the alleged error was made." *State v. Dean*, 2004 UT 63, ¶ 16, 95 P.3d 276 (citing *State v. Eldredge*, 773 P.2d 29, 35–36 (Utah 1989)). Thus, an obvious error is one that contravenes "settled appellate law," *State v. Ross*, 951 P.2d 236, 239 (Utah Ct. App. 1997), or "the plain language of the relevant statute," *State v. Low*, 2008 UT 58, ¶ 41, 192 P.3d 867.

¶28     Here, the relevant statute provides that the district court may modify an order establishing joint legal or physical custody only if the circumstances of the child, or one or both parents (or joint legal or physical custodians), "have materially and substantially changed since the entry of the order to be modified." Utah Code Ann. § 30-3-10.4(1) (LexisNexis 2012). However, that statute does not remove pre-decree conduct from the inquiry; in fact the opposite is true. "When determining whether there has been a substantial change in circumstances, the district court will consider the nature and materiality of any changes in those circumstances *upon which the earlier award of custody was based.*'" *Snyder v. Snyder*, 2015 UT App 245, ¶ 10, 360 P.3d 796 (quoting *Hogge v. Hogge*, 649 P.2d 51, 54 (Utah 1982)).

¶29     Furthermore, the controlling statute states, "In determining whether the best interest of a child will be served by either modifying or terminating the joint legal or physical custody order, the court shall, in addition to other factors the court considers relevant, consider the factors outlined in Section 30-3-10 and Subsection 30-3-10.2(2)." Utah Code Ann. § 30-3-10.4(2)(a). The factors outlined in those subsections guide the court's original custody award and include the parties' "past conduct," *id.* § 30-3-10(1)(a)(i); their "past and present ability . . . to cooperate with each other"; "any history of, or potential for, child abuse"; and "any other factors the court finds relevant," *id.* § 30-3-10.2(2)(h), -(i), -(j). Nothing in the statutes states or implies that, in determining whether modifying a custody award would serve the best interest of the child, the court must confine its inquiry to the parties' conduct after entry of the original custody award.

¶30     Rather than excluding the parties' pre-decree conduct from the inquiry, the controlling statutes invite the district court to include it. Accordingly, the district court did not err, obviously or otherwise, in considering in the changed-

circumstances inquiry all material facts, including events and conduct that occurred before entry of the original divorce decree.

### III. The District Court's Findings Support Its Custody Award

¶31    Father next contends that the district court's findings do not support its custody order. Under the court's custody order, Father and Mother continue to exercise joint legal and physical custody of the child; however, the school-year visitation schedule changes from a 7/7 schedule to a 9/5 schedule, with Mother having nine overnights and Father having five overnights per fortnight.

¶32    "A trial court is given particularly broad discretion in the area of child custody incident to separation or divorce proceedings." *Doyle v. Doyle*, 2011 UT 42, ¶ 40, 258 P.3d 553 (citation and internal quotation marks omitted). We will reverse "[o]nly where trial court action is so flagrantly unjust as to constitute an abuse of discretion." *Id.* (citation and internal quotation marks omitted).

¶33    Father acknowledges an adequate evidentiary basis for the following findings: that since the divorce Mother has been a more-or-less full-time caregiver; that Mother has greater ability to provide parental care over surrogate care; that Father has relied exclusively on child care during the week; that Father failed to list Mother as a parent or emergency contact at the child-care facility; that for a period of at least three months—and perhaps six months—Father cut off all telephone communication between Mother and the child during Father's parent time; and that Father had posted a comment online to the effect that he was hung over on Christmas morning 2011, a time when the child was staying with him. In addition, Father does not challenge the court's findings that since the divorce, Mother moved from West Valley City to Layton and then to Clearfield,

that the child is enrolled in a school in Syracuse, and that the school is 43 miles from Father's residence.

¶34    Father challenges other findings as irrelevant, lacking evidentiary support, or contrary to the court's ultimate ruling. But even if Father were correct about those other findings—a question on which we express no opinion—we could not in the face of the findings summarized above conclude that the district court's alteration of the school-year custody schedule is "so flagrantly unjust as to constitute an abuse of discretion." *See id.* (citation and internal quotation marks omitted).

IV. The District Court Considered the Relevant Factors

¶35    Father next contends that the district court "failed to consider the 4-903 factors." *See* Utah R. Jud. Admin. 4-903. His brief discusses the 12 subsections and sub-subsections of Utah Rule of Judicial Administration 4-903(5) and addresses the extent to which, in his view, the district court considered or failed to consider each.

¶36    To be clear, rule 4-903 governs the qualification and selection of custody evaluators and the evaluations they generate. Its stated purpose is to "establish uniform guidelines for the preparation of custody evaluations." *Id.* The rule specifies factors that "evaluators must consider and respond to." *Id.* R. 4-903(5). But it "does not direct the court to consider the factors enumerated therein; it merely directs that custody evaluations shall be performed by qualified professionals, and it directs those professionals to consider a number of factors in making a report to the court." *Williams v. Williams*, 2001 UT App 330U, para. 1.

¶37    We understand that Father uses the term "4-903 factors" as shorthand for child custody factors mentioned in case law. And in fact on appeal he quotes extensively, both directly and

indirectly, from *Hutchison v. Hutchison*, 649 P.2d 38 (Utah 1982). In *Hutchinson*, our supreme court listed factors to be considered in a best-interest inquiry. *Id.* at 41. But the supreme court in *Hutchison* did not purport to create a list of factors the court must consider on peril of reversal. Rather, it listed "[s]ome factors" that the court "may consider" in determining the child's best interest. *Id.* And this court has held, "Although the court considers many factors, each is not on equal footing." *Hudema v. Carpenter*, 1999 UT App 290, ¶ 26, 989 P.2d 491. "Generally, it is within the trial court's discretion to determine, based on the facts before it and within the confines set by the appellate courts, where a particular factor falls within the spectrum of relative importance and to accord each factor its appropriate weight." *Id.* Moreover, "the factors relied on by the trial judge in awarding custody must be articulable and articulated in the judge's written findings and conclusions." *Smith v. Smith*, 726 P.2d 423, 426 (Utah 1986).[4]

¶38    Mother argues that Father failed to preserve his claim that the district court failed to consider all the necessary factors. We agree. Father objected to the court's findings on the ground that the court "failed to consider the 4-903 factors." However, the objection did not specify any particular factor that the court had failed to consider. Rather, his objection was a one-line blanket objection.

¶39    It is well settled that "claims not raised before the trial court may not be raised on appeal." *State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346. To preserve an issue for appeal, a litigant "must enter an objection on the record that is both timely and

---

4. Section 30-3-10(1)(a) states that in determining a change in custody, the court "shall consider" certain enumerated factors, but Father does not claim that the court violated that section. *See* Utah Code Ann. § 30-3-10(1)(a) (LexisNexis Supp. 2014).

specific." *State v. Rangel*, 866 P.2d 607, 611 (Utah Ct. App. 1993). "The objection must be specific enough to give the trial court notice of the very error of which [the party] complains." *State v. Bryant*, 965 P.2d 539, 546 (Utah Ct. App. 1998) (citation and internal quotation marks omitted). Thus, to be preserved for appeal, an issue "must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (citation and internal quotation marks omitted).

¶40    In *438 Main Street* the appellant objected that the trial court's findings were "inaccurate and incomplete." *Id.* ¶ 47. The supreme court held that this objection did not preserve an appellate claim that the findings were "insufficiently detailed to disclose how the court reached its decision." *Id.* ¶ 53. Similarly here, we agree with Mother that Father's one-line blanket objection lacked the specificity to preserve his appellate claim that the court failed to consider each of 12 factors listed in rule 4-903(5) or the factors listed in *Hutchison*. We reject his challenge on that ground.

¶41    Alternatively, we are satisfied that the factors relied on by the district court in awarding custody are both "articulable and articulated in the judge's written findings and conclusions." *Smith*, 726 P.2d at 426. For example, we note the following findings of the court: that a custody evaluator rated Mother as the better parent than Father; that Father lived 43 miles from the child's school; that the parties admitted to two physical altercations between the parties in the presence of the child in which Father was the aggressor; that Mother had the greater ability to provide personal child care; that Father relied exclusively on surrogate care; that Father cut off telephone communication between Mother and the child for a period of months during his parent time; and that Father failed to list

Mother as a parent or an emergency contact at the child's child-care facility.[5]

¶42 The best practice may well be to make findings on each of the statutory factors that sections 30-3-10 and 30-3-10.2(2) require the court to consider. And we recognize that the court's findings here do not line up neatly with the factors listed in those sections, rule 4-903, or *Hutchison*. But a court's findings are determined at least in part by "the facts before it." *Hudema v. Carpenter*, 1999 UT App 290, ¶ 26, 989 P.2d 491.

¶43 In sum, Father failed to preserve his objection based on custody considerations. But even if he had preserved this objection, we could not say that the district court's action was "so flagrantly unjust as to constitute an abuse of discretion." *See Doyle v. Doyle*, 2011 UT 42, ¶ 40, 258 P.3d 553 (citation and internal quotation marks omitted).

## V. The District Court Did Not Abuse Its Discretion in Rejecting the Court-Appointed Evaluator's Recommendations

¶44 Father next contends that the district court erred in rejecting the recommendations of Dr. Todd Dunn, the court-appointed custody evaluator. "Although a district court is not bound to accept a custody evaluator's recommendation, the court is expected to articulate some reason for rejecting that recommendation." *R.B. v. L.B.*, 2014 UT App 270, ¶ 18, 339 P.3d 137. We will not set aside the district court's findings unless clearly erroneous. *Woodward v. LaFranca*, 2013 UT App 147, ¶ 7, 305 P.3d 181.

---

5. We note that "interference with visitation may be a factor relevant to the issues of both a change in circumstances and the child's best interests." *Smith v. Smith*, 793 P.2d 407, 411 (Utah Ct. App. 1990).

¶45 The district court's findings leave no doubt why the court rejected Dr. Dunn's recommendation. For example, the court found that Dr. Dunn relied heavily on text messages between the parties given to him by Father without allowing Mother the opportunity to explain or rebut them and without including all of Father's corresponding text messages; Dr. Dunn initially misapplied the "intimate partner violence schema"; Dr. Dunn supplied information to Father that he withheld from Mother; Dr. Dunn failed to assess the step-parents' role in child care; and Dr. Dunn failed to consider Father's alcohol use. For reasons explained by Father, the court might have found otherwise on each of these points. But Father does not demonstrate—or even assert—that any of these findings are clearly erroneous. We thus conclude that the court here did "articulate some reason for rejecting" Dr. Dunn's recommendation. *See R.B.*, 2014 UT App 270, ¶ 18.

## VI. The District Court Did Not Abuse Its Discretion in Allocating Evaluator Costs

¶46 Finally, Father argues that the district court erred in requiring him to pay Dr. Dunn's expert witness fees. "The determination to award taxable costs is within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion." *Ong Int'l (USA), Inc. v. 11th Ave. Corp.*, 850 P.2d 447, 460 (Utah 1993).

¶47 Although Father's actual income is approximately three times as much as Mother's imputed income, the district court ordered the parties to bear their own attorney fees and costs.[6] In addition, the court ordered Father to pay the fee of Dr. Dunn,

---

6. With one exception: the court ordered Mother to pay Father within 90 days $367.20 incurred by him when Mother failed to appear at the pretrial conference as ordered by the court.

whom the court appointed, and Mother to pay the fee of Dr. Davies, whom Mother retained.

¶48    On appeal, Father argues that "the trial court failed to indicate why [it] would require only [Father] to pay the costs of the court-appointed evaluator," Dr. Dunn. Father's appellate claim parallels his post-trial motion seeking an "explanation as to why [Father] should have to bear the entire costs of the Court's expert." But it ignores the explanation given by the district court in response to that motion: "This decision was equitable, in part, because [Father's] income is significantly higher than that of [Mother,] who does not work outside of her home and has only minimum wage imputed to her." "Because [Father] fails to address the basis of the district court's ruling, we reject this challenge." *See Golden Meadows Props., LC v. Strand*, 2010 UT App 257, ¶ 17, 241 P.3d 375.[7]

## CONCLUSION

¶49    For the reasons stated above, the judgment of the district court is affirmed.

———————

7. In addition, because Father's brief contains no citation to the law relevant to this point, it falls short of demonstrating that the district court erred. *See Simmons Media Group, LLC v. Waykar, LLC*, 2014 UT App 145, ¶ 37, 335 P.3d 885.