2018 UT App 184

## THE UTAH COURT OF APPEALS

KIT RICHARD ERICKSON,
Appellant,
*v.*
SHANDI ERICKSON,
Appellee.

Opinion
No. 20170100-CA
Filed September 27, 2018

Third District Court, West Jordan Department
The Honorable L. Douglas Hogan
No. 104402189

Kit Richard Erickson, Appellant Pro Se

Marco C. Brown and Jonathan D. Hibshman,
Attorneys for Appellee

JUDGE KATE A. TOOMEY authored this Opinion, in which
JUDGES JILL M. POHLMAN and RYAN M. HARRIS concurred.

TOOMEY, Judge:

¶1     Kit Richard Erickson (Father) appeals from the district court's denial of his petition to modify the custody award of his divorce decree from Shandi Erickson (Mother). He also disputes the court's decision to modify parent-time and the court's award of attorney fees. We affirm in part and reverse in part.

### BACKGROUND

¶2     Father and Mother obtained a bifurcated divorce decree in 2011. The parties stipulated to a divorce settlement regarding, among other things, custody, support, and parent-time, and the district court entered a supplemental decree of divorce in 2013.

The parties' four minor children were to reside primarily with Mother, with Father awarded parent-time as outlined by statute.

¶3    In February 2015, Father petitioned the court to modify the divorce decree, requesting a change in custody and child support and alleging that Mother had a higher earning potential and should be required to disclose it. Mother denied Father's allegations and later filed a counter-petition seeking to modify parent-time and Father's child-support obligation.

¶4    Discovery was prolonged. Father had difficulty providing adequate responses to Mother's discovery requests. He claimed that some of the requested documents were not in his "possession, custody, or control" and that Mother's requests were duplicative or irrelevant. The court held three pretrial conferences discussing the deficiencies of Father's discovery responses and Mother's counsel provided multiple clarifications regarding what was requested. But thirteen months after Mother's first discovery requests were mailed to Father, she had received only twenty-five percent of the requested discovery.

¶5    In October 2016, the court held a trial regarding discovery sanctions, custody, child support, parent-time, medical insurance and costs, and attorney fees.

¶6    The court's findings of fact and conclusions of law determined there was no substantial and material change in circumstance that would warrant a change in custody. It imputed an increase to both parties' incomes and used the imputed amounts to recalculate child support. The court also adjusted the parties' parent-time, allowing Mother to pick up the children on Sunday nights. In addition, based on the parties' stipulation, the court adjusted Father's school-year parent-time from Thursday nights through Sunday nights to Friday nights through Sunday nights, with additional parent-time in the summer to compensate for the lost overnights. Additionally, the court determined that Father had acted in bad faith during the

litigation, including during the discovery process. The court ordered Father to pay one half of Mother's attorney fees incurred for in attempt to get Father to comply with the discovery requests. It further ordered Father to pay one half of Mother's attorney fees incurred during the litigation, not including the payment of fees for the discovery violations. Father appeals.

ISSUES AND STANDARDS OF REVIEW

¶7     Father raises six contentions of error on appeal. First, he contends the district court erred by determining there had been no substantial and material change in circumstance regarding custody while also simultaneously modifying the parties' parent-time. A court's determination of whether there has been "a substantial and material change in circumstances sufficient to justify [a] custody modification" is reviewed for abuse of discretion, *Doyle v. Doyle*, 2009 UT App 306, ¶ 7, 221 P.3d 888, *aff'd*, 2011 UT 42, 258 P.3d 553, as is the court's decision to modify parent-time, *Blocker v. Blocker*, 2017 UT App 10, ¶ 8, 391 P.3d 1051.

¶8     Second, Father contends the court erred by allowing the introduction of expert testimony at trial because it erroneously determined that the 2011 amendments to rule 26 of the Utah Rules of Civil Procedure "permitted [Mother] to introduce expert testimony without any previous disclosure." "We review the [district] court's interpretation of a rule of civil procedure for correctness." *Solis v. Burningham Enters. Inc.*, 2015 UT App 11, ¶ 11, 342 P.3d 812. We review the district court's decision regarding the admissibility of testimony for an abuse of discretion. *Id.*

¶9     Third, Father contends the court erred in admitting Mother's trial exhibits, arguing that the exhibits "had not been served upon [Father]" in violation of rules 5 and 26 of the Utah Rules of Civil Procedure. "We review the [district] court's

interpretation of a rule of civil procedure for correctness." *Solis*, 2015 UT App 11, ¶ 11. "Generally, the [district] court is granted broad latitude in handling discovery matters and we will not find abuse of discretion absent an erroneous conclusion of law or where there is no evidentiary basis for the [district] court's rulings." *Thurston v. Workers Comp. Fund*, 2003 UT App 438, ¶ 11, 83 P.3d 391 (quotation simplified).

¶10    Fourth, Father contends the court erred by refusing to hear testimony from the parties' fourteen-year-old child (Child) in violation of Utah Code section 30-3-10. The district court's interpretation of a statute "is a question of law that we review for correctness." *Garcia v. Garcia*, 2002 UT App 381, ¶ 4, 60 P.3d 1174 (quotation simplified). We review a district court's decision to admit or exclude evidence for an abuse of discretion. *Olson v. Olson*, 2010 UT App 22, ¶ 10, 226 P.3d 751.

¶11    Fifth, Father contends the district court erred in awarding attorney fees to Mother based on its finding that Father acted in bad faith. "The grant of an attorney-fee award pursuant to the bad-faith attorney-fee statute requires findings that the underlying claims were meritless and pursued in bad faith." *Robinson v. Robinson*, 2016 UT App 33, ¶ 9, 368 P.3d 105 (citing Utah Code Ann. § 78B-5-825 (LexisNexis 2012)). "Whether an action or defense is meritless constitutes a legal conclusion that we review for correctness. But the district court's finding as to bad faith is primarily factual, and we review the finding for clear error." *Id.* (quotation simplified). When reviewing the imposition of sanctions under rules 37 and 26 of the Utah Rules of Civil Procedure, we "first consider whether the district court has made a factual finding that the party's behavior merits sanctions." *PC Crane Service, LLC v. McQueen Masonry, Inc.*, 2012 UT App 61, ¶ 7, 273 P.3d 396 (quotation simplified). "We will uphold any such finding unless it is clearly erroneous." *Id.*

¶12    Sixth, Father contends the court erred by entering findings of fact and conclusions of law that were not supported

by the record. A district court's "factual findings are reviewed deferentially under the clearly erroneous standard, and its conclusions of law are reviewed for correctness with some discretion given to the application of the legal standards to the underlying factual findings." *Jones v. Jones*, 2013 UT App 174, ¶ 46, 307 P.3d 598 (quotation simplified), *aff'd*, 2015 UT 84, 359 P.3d 603.

¶13 Finally, Mother requests an award of attorney fees incurred in her defense of this appeal.

ANALYSIS

I. The Custody Determination

¶14 Father contends the district court erred in determining there had not been a substantial and material change in circumstances regarding the custody of the children. For a court to modify an order of joint legal or physical custody, a party must show that the circumstances of a child or parent have materially and substantially changed since the entry of the order to be modified and that "a modification of the terms and conditions of the order would be an improvement for and in the best interest of the child." Utah Code Ann. § 30-3-10.4(2)(b) (LexisNexis Supp. 2017) The court "first must decide whether there are changed circumstances warranting the exercise of the court's continuing jurisdiction to reconsider the custody award." *Doyle v. Doyle*, 2011 UT 42, ¶ 24, 258 P.3d 553 (quotation simplified). "Only if circumstances have materially and substantially changed may the court proceed to the second step—a determination as to the manner in which custody should be modified, if at all, based on a de novo review of the child's best interests." *Id.* (quotation simplified).

¶15 Father's primary contention is that the court erred by changing the parties' parent-time schedule when it determined

there was no substantial and material change in circumstances regarding custody of the children. He argues that "a change in the children's school schedule" was a "material change in circumstances," which was evidenced by the court's modification of the parties' parent-time. This modification, he argues, is at odds with the court's determination that "there [had] been no substantial and material change in circumstance that would warrant a change in custody." We disagree.

¶16   "The change in circumstances required to justify a modification of a divorce decree varies with the type of modification sought." *Haslam v. Haslam*, 657 P.2d 757, 758 (Utah 1982). Therefore, "a specific change in circumstances may justify reconsideration of one provision of a divorce decree while not justifying reconsideration of another provision." *Becker v. Becker*, 694 P.2d 608, 611 (Utah 1984). A material change of circumstances with respect to parent-time is thus "a different inquiry from whether there was a material change with respect to custody." *Jones v. Jones*, 2016 UT App 94, ¶ 10, 374 P.3d 45. When modifying parent-time, the petitioner is required to make only "*some* showing of a change in circumstances," which "does not rise to the same level as the substantial and material showing required when a district court alters custody." *Id.* A court may therefore determine that a change in circumstances warrants modification of parent-time while simultaneously determining there is no substantial and material change in circumstances to justify a modification of custody. In other words, it is not necessarily erroneous for a court to determine that a particular change in circumstances is sufficient enough to warrant a change in a parent-time schedule, but not significant enough to warrant a modification of custody.

¶17   Here, the district court found that there was a change in circumstances, allowing it to alter parent-time. "For two years prior to trial," Mother picked up the parties' children on Sunday nights because when their eldest child began junior high school

"it became unfeasible to pick up the children on Monday mornings, and [Father] has always allowed the Sunday night pick-ups." The court also found that Father was "often late in picking up [the] children on Fridays" and that there was "no set pick-up time" for his Friday parent-time. The court therefore concluded that the children "shall return to [Mother's] home on Sunday evenings at 8 p.m." and that Father's "midweek and Friday pick-up times shall be at 6:30 p.m." Finally, the court explained that although Father's weekend parent-time was Thursday through Sunday, both parties agreed at trial that it would be better for the weekend parent-time to be scheduled for Friday to Sunday night during the school year, unless the children did not have school on Friday, with additional time given to Father in the summer to account for the overnights he lost during the school year.

¶18 Father now contends that these changes amounted to a material and substantial change in circumstances that warrants a change in custody. But we are perplexed as to how a change in the pick-up times without a change in the number of overnights Father has as parent-time amounts to a substantial and material change in circumstances. *See Jones*, 2016 UT App 94, ¶ 10 (explaining that "*some* showing of a change of circumstance" is required to alter parent-time arrangements, but "that showing does not rise to the same level as the substantial and material showing required" to alter custody). Rather, the court took the opportunity to provide set pick-up times—where before there were none—and gave Father additional overnights in the summer to be consistent with the number of days he would have been able to exercise as parent-time if the school-year parent-time schedule had not been changed due to the parties' stipulation. Although there was "*some* showing of change in circumstances" when the district court altered the parent-time arrangement, the change did not rise to the same level as the substantial and material showing required to alter custody. *See id.*

¶19　Next, Father argues the court was required to find a substantial and material change in circumstances in regard to custody because "[b]oth parties brought competing petitions to modify, with both alleging material changes in circumstances." Citing *Zavala v. Zavala*, 2016 UT App 6, 366 P.3d 422, Father claims that because Mother argued in her counter-petition that there had been a material change, she waived her right to deny there had been one, and the court therefore abused its discretion by reaching such a conclusion. *See id.* ¶ 20.

¶20　But Father misinterprets *Zavala*. In that case, the father had alleged a material change in circumstances in his petition, *id.*, and the district court amended the parties' divorce decree by modifying the school-year custody schedule, *id.* ¶ 5. The father appealed the court's decision, arguing the court had not found a material and substantial change of circumstances before it modified the custody arrangement. *Id.* ¶ 6. This court held that under the invited-error doctrine, the father waived any claim that a material and substantial change of circumstances had not occurred by alleging such a change in his petition. *Id.* ¶¶ 20–21. Instead of requiring a court to find a material change if one is alleged by both parties, *Zavala* prevents a party from arguing on appeal that the court erred in finding a material change if that party alleged such a change in that party's pleadings. *See id.* ¶¶ 20–21, 25. *Zavala* also does not require that a court find a material change in circumstances just because the parties alleged it. We therefore find no traction in Father's argument that the district court's determination is bound by the parties' pleadings.

¶21　Finally, Father argues the district court applied the "wrong legal standard" by not considering the fact that the underlying custody award was based on a stipulated agreement. He cites *Elmer v. Elmer*, 776 P.2d 599 (Utah 1989), for the proposition that when custody decrees are not adjudicated, they are "not based on an objective, impartial determination of the best interests of the child," and "the res judicata policy

underlying the changed-circumstances rule is at a particularly low ebb." *Id.* at 603. But *Zavala* clarified that *Elmer* "does not permit the best-interest inquiry to swallow up the changed-circumstances inquiry: 'Even an overwhelming case for the best interest of the child could not compensate for a lack of proof of a change in circumstances.'" *Zavala*, 2016 UT App 6, ¶ 18 (quoting *Doyle v. Doyle*, 2011 UT 42, ¶ 38, 258 P.3d 553). *Elmer* thus "respects the statutory framework" that "require[s] [a] finding of a material and substantial change of circumstances." *Id.* ¶¶ 16, 18. Here, the district court determined that "[i]n light of all evidence received during trial" it was "clear" "there [had] been no substantial and material change in circumstance that would warrant a change in custody." This is a determination we will not overturn absent an abuse of discretion, *Doyle v. Doyle*, 2009 UT App 306, ¶ 7, 221 P.3d 888, *aff'd*, 2011 UT 42, which Father has not demonstrated.[1]

## II. The Admission of Expert Testimony

¶22    At trial, Mother called an expert witness, a certified public accountant (the CPA), to testify concerning Father's financial situation. Father argues the district court erred in allowing the expert to testify, because Mother did not disclose the expert testimony to Father as required by rule 26(a)(4) of the Utah Rules of Civil Procedure.

---

1. Father also faults the district court for not conducting "an analysis of which parent would be the most suitable for primary custody, while focusing on the best interests of the children." The best-interests analysis takes place only if the court has determined "circumstances have materially and substantially changed." *See Doyle v. Doyle*, 2011 UT 42, ¶ 24, 258 P.3d 553. Because we have determined the court did not err in determining there was no material and substantial change in circumstance, we do not reach Father's contention.

¶23    Rule 26(a)(4)(A) requires one party to serve on the other party information regarding any person who is retained to provide expert testimony or present evidence under rule 702 of the Utah Rules of Evidence. Among other things, the party is required to disclose the expert's name, qualifications, and recent publications, a summary of the opinions to which the expert will testify, and all information the expert will rely upon in forming those opinions. Utah R. Civ. P. 26(a)(4)(A). If a party fails to make this disclosure under rule 26, "that party may not use the undisclosed witness, document or material at any hearing or trial unless the failure is harmless or the party shows good cause for the failure." *RJW Media Inc. v. Heath*, 2017 UT App 34, ¶ 21, 392 P.3d 956 (quotation simplified).

¶24    We determine that Mother's failure to meet the disclosure requirements of rule 26 was harmless. Mother's witness list disclosed that she had procured the CPA as a witness approximately three weeks before trial. She did not disclose the required information regarding the expert witness, and she acknowledged at trial her disclosures did "not comply with [rule] 26." At the outset of trial, when discussing Mother's failure to disclose the required information, the district court asked Father if he "believe[d] this [was] going to unfairly prejudice [him] in some way, shape or form" and if Father would like a continuance so that he could "employ an accountant or someone else on [his] behalf to take a look at this."[2] Father stated that he did not want a continuance. The court asked, "[I]f I intend to allow the expert to testify, do you still want to proceed today or would you like a continuance?" Father noted his objection, and the court stated it would allow the expert to testify because it would not "be unfairly prejudicial

---

2. Father stated that he did not want a continuance, because that would "only prejudice[] [him] in a different way." But Father did not explain in what way it would prejudice him.

to [Father]." The court reiterated that Father could have more time to review and retain an equivalent expert, and Father confirmed again that he preferred to proceed. The court noted that Father had had access, "for an extensive period of time," to the same documents the expert had reviewed and determined that allowing the expert testimony would not be unfairly prejudicial to Father.

¶25 The district court therefore determined that Mother's failure to properly disclose the information under rule 26 was harmless to Father. *See id.* We conclude that the court did not err in determining that Mother's failure to give proper notice under rule 26 was harmless, because Father declined the repeated offers to continue the trial to procure "an equivalent expert," which would have remedied any potential harm. As the court noted, it "appreciates the assistance" of experts to testify to financial documents for purposes of determining income, but that it "see[s] these cases tried with and without" these experts and is capable of doing so without one. Moreover, Father has not demonstrated how the outcome of the proceeding would have changed had Mother timely made her expert disclosures.[3] He merely states that this failure precluded him from reviewing "a summary report" of the expert or requesting a deposition of the

---

3. Father argues that Mother's failure to disclose is not harmless because "Rule 26 would be eviscerated" if "[a]ny party could show up to trial with an expert that had never before been disclosed and then claim that the expert used the opposing party's records to prepare, and . . . be allowed to testify." But here, admitting the expert testimony would not "eviscerate" rule 26 in the way Father contends, because the district court determined that Mother's nondisclosure was harmless, and in any event offered Father the option of a continuance to rectify any claimed prejudice that might have occurred because of the nondisclosure.

expert before trial without demonstrating that having that additional information before trial would likely have affected its outcome.

¶26 We conclude that Father has not shown that he was prejudiced by Mother's failure to disclose the CPA's information under rule 26(a)(4)(A), and therefore the district court did not err in admitting the expert testimony after determining the failure was harmless.

### III. The Admission of Mother's Trial Exhibits

¶27 Father contends the district court erred in admitting Mother's trial exhibits because she failed to deliver them to Father by the court-set deadline.

¶28 Rule 26(a)(5) of the Utah Rules of Civil Procedure requires one party to serve on the other a copy of each exhibit the party may offer as evidence. Here, at the pretrial conference, the district court ordered the parties to exchange proposed exhibits by September 26, 2016. On the evening of September 26, 2016, Mother's counsel informed Father that he was having difficulty "getting [his] Google Drive[4] [account] to properly send [Father] the files" "containing the exhibits." On September 27, 2016, Mother's counsel sent Father an email with a link granting access to the Google Drive folder that contained all of Mother's exhibits. Counsel also sent an email to Father asking him to let counsel know if Father was unable to access the files through the link. Later that evening, counsel attempted to deliver a hard

---

4. Google Drive is a secured online storage account that individuals may use to backup files and documents, which can be shared with others with the permission of the owner of the account. Counsel for Mother explained that he used Google Drive because he could not send the documents as attachments to an email due to their voluminous nature.

copy of the exhibits to Father's residence, but no one answered the door. The next morning, counsel attempted to deliver the exhibits to Father's workplace, but no one was at the business to take the delivery. On October 3, Father filed a motion in limine to exclude all of Mother's trial exhibits, claiming that sharing access to a Google Drive account was not an acceptable form of service; that he had not consented to accept service by email; that he was unable to access the documents through the email link; and that he was prejudiced by not being able to access the documents to review, evaluate, and prepare.

¶29 The district court addressed Father's motion in limine on the morning of trial. A member of Mother's counsel's firm testified that she sent Father an email with a link to a Google Drive file that contained the trial exhibits. She explained that when someone, such as Father, who does not have a Google account attempts to access the link to the Google Drive account or file, she receives a request for permission for that person to access the account or file. She testified that she never received any notification that Father requested permission to view the trial exhibits. Father presented evidence that he was unable to access the files because when he attempted to do so he was required to log in using a Google account, which he does not have. The court pointed out that Father had not attempted to contact Mother's counsel regarding the difficulty of receiving the exhibits. It denied Father's motion, determining that Mother's efforts to deliver the exhibits were sufficient and stating that it had "never seen someone sit back and rely on that as a means to try to exclude what's obviously the subject matter of the litigation."

¶30 On appeal, Father argues the court's conclusion that Mother's efforts were sufficient conflicts with the Utah Rules of Civil Procedure. Specifically, he claims that "[e]mailing a link to a website does not satisfy any of the options available under Rule 5 and in this case did not allow [Father] access to the

documents." We agree with the district court that emailing a link to a Google Drive folder that contained the exhibits was sufficient to satisfy the service requirements of rule 5 of the Utah Rules of Civil Procedure. Rule 5(b)(3) establishes that a paper is properly served by "emailing it to the email address provided by the person . . . if the person has agreed to accept service by email or has an electronic filing account."[5] Utah R. Civ. P. 5(b)(3)(B). We see no material difference between emailing a file as an attachment and emailing a link to a Google Drive account that contains the file.

¶31    Father testified he was unable to access the file and the exhibits it contained. But there was also testimony that Father did not attempt to access the file, and it is undisputed that Father refused to accept the invitation from Mother's counsel to assist him if he was unable to retrieve the documents. Because the exhibits were sent by email, rule 5(b)(3) was satisfied.

¶32    Father also contends the district court erred by admitting Mother's exhibits into evidence without any testimony as to their authenticity as required by rule 901 of the Utah Rules of

---

5. Father claims emailing Mother's exhibits was insufficient because he neither consented to accept service by email nor does he have an electronic filing account. *See* Utah R. Civ. P. 5(b)(3)(B). The Advisory Committee Notes to rule 5 state that the rules "allow service by means other than U.S. Mail and hand delivery if consented to in writing by the person to be served." Here, there is no evidence that Father explicitly consented in writing to being served by email. But the court heard evidence that Mother's counsel had served Father numerous pleadings and other documents by email and Father accepted such service throughout the case. Father cannot now complain that he has not consented to service by email for the sole purpose of excluding Mother's exhibits at trial.

Evidence. But this claim is unpreserved. "As a general rule, claims not raised before the district court may not be raised on appeal." *Bresee v. Barton*, 2016 UT App 220, ¶ 34, 387 P.3d 536 (quotation simplified). "An issue is preserved for appeal when it has been presented to the district court in such a way that the court has an opportunity to rule on it." *Id.* (quotation simplified). "The preservation rule applies to every claim . . . unless a litigant demonstrates that exceptional circumstances exist or plain error occurred." *Id.* (quotation simplified).

¶33 Before the district court admitted Mother's exhibits, it acknowledged Father's general objection as to the delivery of the exhibits and asked if he had any other objections. Father replied that he had not seen the documents, so he would not be able to object to them. The court then admitted all of Mother's exhibits into evidence. Later during trial, Father was asked to identify one of Mother's exhibits, and Father objected on the ground that the document lacked foundation. The court explained that the evidence had already been admitted, that the document "appears to have [Father's] acknowledgement at the bottom of the page," and that additional information contained in that document would be helpful to the court. Father then responded, "Okay, yeah, I agree."

¶34 Before trial, Father did not raise the issue of authentication.[6] And during trial, when he generally objected to

---

6. Father argues he could not have raised an objection before the exhibits were admitted because he did not have access to them before trial. As discussed above, the reason Father did not have access to the exhibits was that he either did not attempt to access them or declined Mother's counsel's offer to help access them. *See supra* ¶¶ 30–31. Mother's counsel served the exhibits on Father, and he therefore cannot base his failure to object on the claim that he did not have access to them.

the document for lack of foundation, he did not raise the specific issue of authenticity, and he agreed with the court's explanation of why the information would be helpful to the court. *See Oseguera v. State*, 2014 UT 31, ¶ 10, 332 P.3d 963 (explaining that in determining whether the district court had an opportunity to rule on an issue we consider whether an issue was specifically raised in a timely fashion). Because this issue is not preserved and Father does not argue an exception to the preservation rule, we decline to address it.

## IV. The Exclusion of Child's Affidavit

¶35    Father contends the court erred by "refusing to consider testimony from [Child]." Before and during trial, and through various methods, Father attempted to admit evidence of Child's wishes as to custody, including an affidavit, Child's school assignment, and Mother's testimony. *See* Utah Code Ann. § 30-3-10(1)(e) (LexisNexis Supp. 2017) ("The court may inquire of a child and take into consideration the child's desires regarding future custody or parent-time schedules, but the expressed desires are not controlling and the court may determine the child's custody or parent-time otherwise. The desires of a child 14 years of age or older shall be given added weight, but is not the single controlling factor."). The court rejected each of these attempts for various reasons. Assuming without deciding that the district court erred by not considering Child's testimony regarding her wishes, excluding her testimony did not prejudice Father's case.

¶36    As outlined above, *see supra* ¶ 14 & n. 1, a court must determine that a material and substantial change in circumstances has occurred before engaging in an analysis regarding the best interest of the child. *See Doyle v. Doyle*, 2011 UT 42, ¶ 24, 258 P.3d 553. Here, because the court determined no material and substantial change of circumstances existed, the court never conducted an analysis with respect to the best interest of Child, and it was not required to do so. Child's

testimony regarding her preferences had no effect on the court's determination that there was no material change in circumstances but instead would only have helped the court better understand the best interest of Child. Because there was no harm in excluding Child's testimony, we need not decide whether the court erred by excluding it.

## V. The Attorney-Fees Awards

¶37 The district court made two separate awards of attorney fees to Mother. The first was for one half of Mother's attorney fees and costs incurred related to Father's "bad faith in not responding to [Mother's] discovery requests." The second required Father to pay one half of Mother's attorney fees for his "general bad faith behavior" during the litigation process, not including those already awarded for the discovery violations. Though we conclude the court did not err in awarding the discovery sanctions, we determine Father's actions were not wholly without merit and therefore reverse the district court's second award of attorney fees.

A.     Discovery Sanctions

¶38 Under rule 37 of the Utah Rules of Civil Procedure, upon a party's motion, the court may sanction another party for failure to comply with the court's order regarding discovery. Utah R. Civ. P. 37(b). These sanctions may include ordering "the party or the attorney to pay the reasonable costs, expenses, and attorney fees, caused by the failure [to follow the court's order]." *Id.* R. 37(b)(5).

¶39 The court concluded that Father acted in bad faith during discovery and that his "behavior went beyond any definition of reasonableness and was purposefully calculated to obfuscate, deceive, and thwart the efforts of [Mother] and the Court to accurately determine his real income."

¶40 The court found that during the discovery process, Mother's counsel "filed two Statements of Discovery Issues, a Motion for Rule 37 Sanctions, and an additional Motion for Sanctions regarding discovery." The court held three pretrial conferences that addressed the deficiencies in Father's discovery responses and ordered him to provide all the information and documents Mother requested. After the pretrial conferences, Mother provided "multiple clarifications" "regarding exactly what was requested in discovery." As a result of Father's failure to respond to the discovery requests, Mother had to send multiple subpoenas to Father's financial institutions to receive the requested information. Specifically, the court found that Father had testified "he had no Merrick Bank statements to provide because there was no account activity." But records that Mother's counsel subpoenaed "demonstrated activity and statements during the period requested in [Mother's] discovery."

¶41 The court made substantial factual findings that Father's behavior warranted the sanctions imposed, and there is no indication that any of its findings are erroneous.[7] *See PC Crane*

---

7. Father contends there was no evidence supporting the court's finding that he "had ready access to the requested information and documents through online banking and credit card statements" and that "he could have easily contacted his financial institutions and requested the information and documents [Mother] requested in discovery." Father claims he provided "screen shots that showed exactly what was available to him, and the statements that were shown to be available." But this does not discredit the court's finding that in addition to the online banking system, Father could have contacted his financial institutions to provide the requested information. This is especially true where the court found that Mother, through subpoenas, was able to obtain the requested information from Father's financial institutions.

*Service, LLC v. McQueen Masonry, Inc.*, 2012 UT App 61, ¶ 7, 273 P.3d 396 (explaining that this court upholds any factual finding that a party's behavior merits sanctions unless it is clearly erroneous). Because there is ample evidence supporting the court's conclusion that Father acted in bad faith during the discovery process, we will not disturb the court's conclusion that an award of attorney fees and costs under rule 37 was warranted.

¶42   But the court did not support the amount of fees it awarded Mother with sufficient findings of fact. Mother's attorney filed an affidavit supporting the amount of fees incurred for discovery following the motion for sanctions. The purported amount was $9,049. Mother's attorney attached as an exhibit the billing statements, which included all of the hours billed, not just those related to Father's failure to comply with discovery. Although Mother's attorney did not request all attorney fees, it is unclear from the record that the requested fees went to only the discovery violations and not to all discovery conducted in preparation for trial. And while the court awarded only half the amount Mother requested, the court did not support its finding that Mother did incur $9,049—given that the court was provided with the entire billing statement for the proceedings—and it did not provide any reasoning for awarding only half the requested amount. We therefore remand to the district court to amend its findings to support the amount of fees incurred related to the discovery violations and to provide its reasoning for the amount it determines is appropriate.

B.   Attorney Fees Awarded on the Basis of One Party's Bad Faith Conduct

¶43   Utah Code section 78B-5-825 provides that a district court "shall award reasonable attorney fees to a prevailing party if the court determines that the action or defense to the action was

without merit and not brought or asserted in good faith." Utah Code Ann. § 78B-5-825(1) (LexisNexis 2012).[8] This section requires a court to determine both that the action was without merit and not brought in good faith.

¶44    The court found that the issues Father "brought before this Court clearly did not rise to the level of a petition to change custody" and it therefore concluded that Father's action lacked merit. Though we agree with the district court that many of the issues Father raised would be more properly brought in a petition for an order to show cause than in a petition to modify custody, we do not agree that Father's action was entirely meritless.

¶45    Father's petition to modify the divorce decree alleged several "changes of circumstance" that Father believed merited a change in the parties' custody arrangement. The court correctly determined that the evidence Father brought in support of this contention did not justify a modification of custody. But Father also alleged Mother had completed a bachelor's degree since the

---

8. The court did not specify what authority it relied on in awarding attorney fees to Mother. In an affidavit, Mother's counsel argued Mother was entitled to an award of attorney fees under Utah Code section 78B-6-311, which allows the court to order an award to a party who is injured or suffers a loss caused by contempt. Utah Code Ann. § 78B-6-311(1) (LexisNexis Supp. 2017). But based on the district court's findings, which stated Father "generally acted in bad faith during this litigation because (1) the items brought before this Court clearly did not rise to the level of a petition to change custody, and (2) [Father] did everything in his power to obfuscate and not provide the financial documents [Mother] repeatedly requested," we are convinced the court relied on the bad-faith attorney-fee statute, Utah Code section 78B-5-825.

settlement of the parties' divorce, which was "a material and substantial change in her ability to earn." Father also alleged that child support should be modified, albeit pursuant to the "new custody arrangement" Father had proposed. The court's findings of fact imputed a higher income to Mother. The court also concluded there had been "a substantial and material change regarding child support because [Father's] income has changed" and it modified the parties' child-support arrangement. Because the court imputed a higher income to Mother and modified the parties' child-support obligation, Father's petition was not entirely meritless.

¶46    We therefore conclude the court's award of attorney fees under Utah Code section 78B-5-825 was in error and reverse the court's order in that respect.

VI. The District Court's Findings of Fact and Conclusions of Law

¶47    Father contends the district court erred by entering findings of fact that were not supported by the record.

¶48    First, Father claims the court's findings of fact and conclusions of law are in error because the court did not give Father twenty days to submit an objection to Mother's proposed findings of fact and conclusions of law. The court originally ordered both Father and Mother to submit proposed findings and conclusions by November 30 and stated it would give them twenty days to file any objection. Mother filed a motion to extend the timeframe to prepare written findings, and the court extended the deadline until December 7. Mother ultimately filed the proposed findings on December 20. Father did not submit any proposed findings. The court accepted Mother's findings of fact and conclusions of law and entered its order on January 5. Father argues he should have been given until January 9 to submit an objection to Mother's proposed findings. But Father did not preserve this issue for appeal, because he did not raise it before the district court, and therefore the court did not have an

opportunity to address it. *See Patterson v. Patterson*, 2011 UT 68, ¶ 12, 266 P.3d 828. And Father has not argued that an exception to the preservation rule applies that would allow us to reach the merits of his contention of error. *Id.* ¶ 13.

¶49 Next, Father identifies findings of fact that he claims are not adequately supported by the record. "We will not disturb a [district] court's findings of fact unless they are clearly erroneous." *Brown v. Babbitt*, 2015 UT App 161, ¶ 5, 353 P.3d 1262. "Findings are clearly erroneous only if they are in conflict with the clear weight of the evidence, or if this court has a definite and firm conviction that a mistake has been made." *Id.* (quotation simplified). Father has not met his burden to show that the court's findings were clearly erroneous.

¶50 Father has failed to adequately brief this issue. He has provided only scant record citations, *see* Utah R. App. P. 24(a)(8), which would help us determine whether the findings were truly in conflict with the clear weight of the evidence, and he has failed "to identify and deal with supportive evidence," *see State v. Nielsen*, 2014 UT 10, ¶ 40, 326 P.3d 645 (providing that "an appellant who seeks to prevail in challenging the sufficiency of the evidence to support a factual finding . . . should follow the dictates of rule 24(a)([8]) [of the Utah Rules of Appellate Procedure], as a party who fails to identify and deal with supportive evidence will never persuade an appellate court to reverse under the deferential standard of review that applies to such issues"). For example, Father asserts that the court erred in finding that he had "ready access to the requested [financial] information and documents through online banking and credit card statements" because, according to Father, he "provided screen shots that showed exactly what was available to him." But Father has not addressed the court's reasoning that he had "ready access" to the requested information because of his ability to "contact[] his financial institutions and request[] the information and documents [Mother] requested in discovery."

At trial, Father testified that he did not need to provide his Merrick Bank statements, "because there was no activity with [that] account." But the court found that this was not true, because Mother had subpoenaed those records and they "demonstrated activity and statements during the period requested in [Mother's] discovery." Father has failed to provide any record cite that would refer us to the financial information and documents that he did disclose to Mother, and he has failed to explain why the court erred in determining he had "ready access" to that information when Mother was able to obtain it through subpoena. Father cannot allege that the court's factual findings are unsupported yet expect the appellate court to comb through the record to find factual support for his arguments. The burden of demonstrating that a finding is clearly erroneous remains with Father, and he has not met that burden here.

## VII. Attorney Fees on Appeal

¶51    Mother requests attorney fees on appeal, which this court may award if the party who is awarded fees below is successful on appeal. *See Tobler v. Tobler*, 2014 UT App 239, ¶ 48, 337 P.3d 296 (explaining "the general rule that a party who is awarded fees below is entitled to an award of appellate fees after a successful appeal"). Because we reverse the district court's award of attorney fees under the bad-faith statute to Mother, Mother is not entitled to attorney fees on appeal.

## CONCLUSION

¶52    We conclude the district court did not err in determining there was no material and substantial change in circumstances warranting a change in custody. The court also did not err in allowing the admission of the expert testimony or Mother's trial exhibits. Though we do not decide whether the exclusion of Child's testimony was error, we determine its exclusion was not prejudicial. As to attorney fees, we conclude the court correctly

awarded attorney fees regarding Father's conduct during discovery but failed to support the amount of the award with sufficient findings of fact, and we therefore remand for the court to support its determination. We further conclude the court incorrectly awarded bad-faith attorney fees to Mother based on its determination that Father's action was without merit and reverse its decision. Finally, we determine Father did not meet his burden of persuasion that the court's findings of fact were unsupported.

———————